W. V. Whitson, Jr., and Mamie B. Whitson v. Commissioner.
W. Whitson v. Commissioner
Docket No. 4063.
United States Tax Court
1946 Tax Ct. Memo LEXIS 70; 5 T.C.M. (CCH) 840; T.C.M. (RIA) 46233; October 3, 1946
*70 Upon the facts, held, stock owned by one of the petitioners did not become worthless in 1941. Joe Brown Cummings, Esq., 815 Stahlman Bldg., Nashville 3, Tenn., for the petitioners. Frank M. Thompson, Jr., Esq., and S. Earl Heilman, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: The petitioners, husband and wife, filed a joint income tax return for 1941. The respondent determined a deficiency in the amount of $2,642.95. The sole issue is whether certain stock owned by W. V. Whitson, Jr., became worthless in the taxable year. The facts are found from the evidence adduced. Findings of Fact The petitioners filed a joint return for the year 1941 with the collector of internal revenue at Nashville, Tennessee. They claimed a deduction of $22,300 for a long-term capital loss on stock of the Security Savings & Loan Company. In 1928, 1929 and 1930 petitioner, W. V. Whitson, Jr., at a cost of $44,600, acquired 446 shares of capital stock of the Security Saving & Loan Company, a corporation organized and operating under the laws of Tennessee with its principal place of business at Nashville, Tennessee. The business of the corporation was the making of *71 loans secured by first or second mortgages on real estate or first mortgages on automobiles. On September 18, 1930, the stockholders of the corporation voted to liquidate. Before a satisfactory plan of liquidation was formulated, Whitson, who was president and the largest stockholder in the corporation, made a written proposal under date of November 7, 1930, to buy the outstanding stock, paying each stockholder the par value of his stock, $100 per share, in four instalments on December 1, 1930, April 1, 1931, July 1, 1931 and October 1, 1931, and giving his notes for the deferred payments with the stock to be retained as collateral. In the proposal he stated, in part: I agree that I will not withdraw from the business any part of my investment therein so long as there remains unpaid any part of my obligation under this agreement * * *. He stipulated also that he was to be untrammelled in the conduct of the business or liquidation of the assets. At a meeting on November 13, 1930, the stockholders voted to accept Whitson's proposal and to rescind the former vote to liquidate. All but a few of the stockholders accepted Whitson's proposal. Whitson paid the accepting stockholders the first *72 three instalments upon the purchase price of the stock, but defaulted in the payment of the last instalment. The payments were made out of the funds of the corporation. On March 29, 1933, a bill of complaint was filed in the Chancery Court of Davidson County, Tennessee, by four stockholders against Whitson, the corporation, the stockholders who had not accepted Whitson's offer and the American National Bank, a creditor of the corporation, praying for the appointment of a receiver and the liquidation of the corporation. Pursuant to the petition, a receiver was appointed. The receiver reported on April 27, 1933, that he had taken possession of the assets of the corporation. He appended to the report a balance sheet as of March 29, 1933, showing as follows: SECURITY SAVINGS & LOAN COMPANY BALANCE SHEET - MARCH 29, 1933 Accounts Payable
$ 1,311.71
Accrued Taxes and Interest (Jan. 1, 1933)
7,188.19
Paint on hand at 3602 Pilcher Ave. and 1806 Beach Ave.
$ 17.00
Notes Receivable - Unsecured (C. D. Carley)
141.13
Capital Stock
76,087.50
Stock Purchased (Sec. Sav. & Loan Co.)
1,102.95
Discount - Real Estate Notes
8,991.78
Discount - Auto Notes
24.73
Expense
1,197.18
American National Bank on deposit
1,343.71
American National Bank Spec. A/C
485.72
(Cash given to American Natl. Bank to take up notes as per
receipts signed by Bank)
Furniture and Fixtures
1,335.10
Notes Receivable - secured by 40 shares Life & Cas. Ins. Co. stock,
note signed Ollie M. Greer, et al.)
106.65
Interest Earned
630.72
Interest Paid
214.83
Interest Paid on Sec. Sav. & Loan Stock
3,988.45
O. V. Jenkins A/C - Auto on hand
193.68
Notes Payable
31,350.00
Notes Receivable - See Schedule
56,170.66
Notes Receivable - See Schedule
222.86
Cash, Checks and Expenditure Tickets
511.46
Real Estate and Real Estate Equities
27,805.93
Real Estate Operating A/C
425.42
Reserve for Depreciation Furn. and Fixt.
766.81
Surplus
17,231.76
Tax on Checks
1.58
Morphord Whitson
62.16
W. V. Whitson, Jr.
13,925.61
Whitson Lumber Co.
119.97
Accounts Receivable - See Schedule
276.18
Real Estate foreclosed First Mortgagee
933.34
Customers Reserve - See Schedule
486.73
$127,325.75
$127,325.75
*73 On June 6, 1934, two stockholders, Charles Eakin and Blanche Graves, filed an intervening petition in which they alleged that they had not accepted Whitson's offer to buy their stock, that Whitson had made payment from the funds of the corporation for the stock he had agreed to buy and that the stockholders who received the payments knew, or should have known, that the payments were from the funds of the corporation and that such payments would deplete the capital of the corporation and make it insolvent. They alleged further that some seventy stockholders had been paid the par value of their stock in full in the amount of $84,300 and that some forty-seven other stockholders holding stock of the par value of $54,800 had been paid in part in the total amount of $47,950. They stated that Eakin had received $1,075 on his $2,000 par value of stock and Mrs. Graves had received nothing on her $3,000 par value of stock. According to the petition the largest amount paid any stockholder was $4,000, seven others were paid amounts in excess of $2,000 each and fifteen were paid $2,000 each. The intervenors charged that the receiver would have insufficient funds to pay the debts and that the intervenors *74 would therefore receive nothing for their stock. They prayed that the receiver be ordered to make demand upon the stockholders who had received payments for the sums received by them and be empowered to enforce such demands by suit, and that the monies so recovered be applied to pay the debts of the corporation and the balance be distributed equally among all the stockholders. The receiver answered the intervening petition admitting that there were not in his hands sufficient funds to pay the debts of the corporation and that in his opinion he would not receive from the assets of the corporation sufficient funds to pay its debts. The court, on November 19, 1937, ordered the receiver to institute suit against the stockholders who had received money belonging to the corporation. This order was vacated by a decree of December 6, 1937, reciting that such a suit might not be successfully maintained and might result in dissipating the assets of the estate available for creditors. This decree provided that any stockholders might bring such a suit in their own names or in the name of the receiver, provided that they first indemnified the receiver against all expenses thereof. The receiver *75 reported under date of December 8, 1939, that none of the stockholders had availed themselves of this authorization. The principal creditor of the corporation was the American National Bank. On March 29, 1933, the corporation owed the Bank $31,350 on notes secured by certain collateral consisting of notes receivable in the face amount of $47,295.59. The Bank applied the balance of the corporation's bank deposit as a credit on the debt and the debt was reduced during the receivership by the application of collections from the collateral. In April 1939, the Bank applied to the court for leave to sell the remaining collateral. By decree of April 28, 1939, the court authorized and directed the Bank to advertise and sell the collateral, excluding the notes of Joe J. and Frances E. Connor, which were in litigation. On June 13, 1939, the Bank reported to the court that on May 19, 1939, it had, pursuant to advertisement, sold the collateral to the American National Bank, the highest bidder, for the sum of $1,250, and had credited the corporation's notes with the net proceeds of $1,235.15. After the termination of the litigation involving the Connor note, the Bank filed an amended claim in *76 1941 for $11,824.49. The Bank shared in the final distribution of assets on the basis of this claim. The receiver reported on April 27, 1933, that the March 29, 1933, balance sheet entry of a debit of $13,925.61 in the name of Whitson was made up of two factors, the amount of $10,866.57 paid on the purchase price of stock in the corporation which Whitson contracted to buy from other stockholders, and $3,059.04 which appeared to be a sum withdrawn by Whitson without explanation. The receiver did not collect any part of this debt. In a report filed January 7, 1935, he stated that he had made no effort to collect this account as Whitson was the beneficial owner of practically all the stock and it was probable that the assets would produce a sufficient amount to pay all creditors. In the report of January 7, 1935, the receiver stated the assets and liabilities of the corporation as of November 30, 1934. to be as follows: SECURITY SAVING & LOAN COMPANY BALANCE SHEET November 30, 1934 ASSETS
CASH IN NASHVILLE TRUST CO.
$ 289.74
CASH ON HAND
58.60
Notes Receivable in hands of American Natl. Bank as collateral on loan (See
Schedule B)
30,998.17
Notes in hands of receiver (See Schedule B)
6,428.86
Furniture and Fixtures
$1,295.10
Less Reserve
766.81
528.29
Book Value of Real Estate owned in fee simple -
1806 Beach Avenue
3,470.19
4904 Tennessee Ave.
1,600.00
808 Olympic Street
750.00
Two vacant lots in Belle Meade
835.34
Remainder interest in 1610 - 9th Ave. N.
350.00
Property in which Equity is held -
1034 W. Eastland Ave.
400.00
1322 Stainback Ave.
382.25
3221 Avenel Ave.
632.00
1612-14-16 and 1618 - 9th Ave. N.
1,588.14
3,002.39
Open Account against W. V. Whitson, Jr.
13,925.61
Open Account against Whitson Lumber Co. (denies owing this)
119.97
Sundry Accounts Receivable (See Schedule G)
233.95
Six Shares Nashville Bridge Co. Stock
200.00
LIABILITIES
Accounts Payable (See Schedule D)
886.35
Notes Payable American National Bank
16,983.35
Morford Whitson
62.16
Customers Reserve *
385.48
*77 The receiver, on December 8, 1939, filed a report in which he stated that the Bank had, pursuant to permission granted, sold the collateral security on the corporation's notes except for the Connor notes excluded from the sale, that the receiver had converted all the assets of the corporation into cash, that he had on hand the sum of $4,766.08 and that the administration of the estate was concluded except for determining the claims to be allowed, the compensation of the receiver and his solicitor, and the disposition of a pending suit by J. J. Connor and Frances E. Connor seeking to cancel certain mortgage notes which had been pledged with the American National Bank. This report was confirmed by the court on December 22, 1939. In July 1941 the receiver filed a further report stating that the litigation had been concluded. He reported cash on hand in the amount of $4,451.90. The Clerk and Master in Chancery filed a statement in September 1941 of the claims allowed in the total amount of $12,679.40 including the Bank's claim for $11,824.49. The court *78 ordered the receiver to pay receiver's and attorney's fees of $1,200 and to pay $3,251.90 to the Clerk and Master, who was directed to pay the court costs and to distribute the funds remaining to the creditors whose claims were allowed. The stock of the Security Saving & Loan Company did not become worthless in 1941. Opinion The sole issue is whether the stock of the Security Saving & Loan Company owned by Whitson became worthless during the taxable year 1941. The petitioners contend that the termination of the receivership in 1941 with the distribution of the realized assets and the discharge of the receiver was the identifiable event marking the year 1941 as that in which the stock became worthless. However, proof of the worthlessness of stock of an insolvent corporation is not dependent upon the completion of liquidation proceedings where the facts show a total loss occurred prior thereto. . The respondent determined that the stock became worthless prior to 1941. The receiver reported in December 1939 that the American National Bank had sold the collateral pledged with it, except for the Connor notes, that the receiver had converted *79 all the assets into cash, that he had on hand the sum of $4,766.08, and that the administration of the assets was concluded except for determining the claims to be allowed, the compensation of the receiver and his solicitor and the disposition of the pending Connor suit. The Connor suit involved less than $600. The principal claim was that of the Bank in an amount exceeding $6,000 in principal, with interest in an undisclosed amount, and some other creditors' claims amounting to several hundred dollars had been filed. It is obvious that at that time the assets in the hands of the receiver would not meet the debts and expenses, and that the petitioners' stock was worthless unless additional funds could be realized. The petitioners, in order to establish their right to the deduction claimed, must prove that the stock had some value at the beginning of 1941, which value was extinguished during that year. See . They contend that until the termination of the receivership in 1941 there was intrinsic value of the stock. They point to three items which, they say, could have been availed of by the receiver or the stockholders to pay the *80 debts and leave some amount for the stockholders. These were (1) a claim against the American National Bank, (2) a claim against the stockholders whose stock had been bought by Whitson and paid for by corporation checks, and (3) a debt owed the corporation by Whitson. Petitioners assert that the receiver or the stockholders could have proceeded against the American National Bank on the ground that the Bank acted improperly in bidding in the collateral pledged by the corporation as security on its loan. They allege that this collateral was worth $7,500 and that the Bank acquired it at a bid of $1,250 and subsequently realized all but $1,900 of the corporation's debt. They attack the validity of the sale on the ground that it was not confirmed by the court. The petitioners contend that the stock had value because of the possibility that the stockholders who had received payment in full or in part for their stock could be forced to contribute to a fund for the benefit of the creditors, the remainder to be divided among all the stockholders equally. The petitioners cite S.W. (2d) 612, to the effect that one is charged with *81 notice when an officer of a corporation makes a payment for his personal benefit with a check of the corporation. They argue that the receipt by the stockholders of payments made from the assets of the corporation by Whitson renders them liable to suit for the recovery of such payments. Petitioner also contend that the receiver, at any time prior to the termination of the receivership and his discharge, could have sued Whitson and collected from him on behalf of the corporation the sum of $13,925.61, with interest. This principal amount is the amount shown on the books as owing to the corporation by Whitson at the time the receiver was appointed. Whitson testified that a judgment for the amount could have been collected from him. These three rights of action are relied upon by petitioners as giving value to Whitson's stock at the beginning of 1941. They say that these rights existed then and were extinguished during the year when the assets were distributed and the receiver was discharged. Assuming that, as petitioners contend, the existence of any or all of these rights of action gave value to Whitson's stock at the beginning of 1941, it has not been shown that these potential assets *82 have disappeared during the taxable year 1941. The distribution of the realized assets and the discharge of the receiver did not extinguish these debts or liabilities. Any creditor or stockholder could have proceeded to enforce them through a new receivership or by reopening the prior proceeding, and the claims, if enforceable in 1940, could have been enforced in 1942. If Whitson's stock had value at the beginning of 1941 by virtue of these rights, petitioners have not met the burden of proving that the stock became worthless in 1941. While our decision might be rested upon this conclusion, it is also clear to us that the rights alleged by the petitioners to exist were too speculative to be relied upon as giving value to Whitson's stock at the beginning of 1941. The alleged claim against the Bank could not reasonably have been regarded as an asset of any substance. The petitioners say the sale was invalid because it was not approved by the court. They question the propriety of the sale to the Bank itself and allege that the Bank realized all but $1,900 of the corporation's debt by subsequent collections from this collateral. As the Bank occupied no fiduciary relationship to the corporation *83 there is no impropriety in the Bank's action of bidding on the property. As directed by the court, the Bank advertised the sale and reported the results thereof to the court. It did all it was required to do. The petitioners have cited no statutes or decisions to show that the sale was invalid in the absence of specific confirmation. The receiver's report of December 8, 1939, mentions the sale and this report was confirmed by the court. To that extent there was confirmation. We cannot say that any irregularity is shown sufficient to warrant the conclusion that the sale might have been set aside or the Bank required to respond in damages. What the Bank subsequently realized from the collateral is immaterial. Furthermore, even if the Bank had bid $7,500, the value alleged by the petitioner, instead of $1,250, the actual bid, the gain to the corporation of $6,250 would not have been sufficient to meet the debts left unpaid at the end of the receivership when the receiver turned over $3,251.90 to the Clerk and Master to pay court costs and apply the balance on the allowed debts of $12,679.40, leaving unpaid $9,427.50, plus the amount of the court costs. The supposed right of action against *84 the stockholders, also, is without substance. Under Whitson's offer of November 7, 1930, which upon acceptance, became the contract between Whitson and the accepting stockholders, he had agreed not to withdraw any part of his investment so long as there remained unpaid any part of his obligation under the agreement. This amounts to an agreement to accord the accepting stockholders preference over Whitson, up to the par value of their stock, in the distribution of any proceeds remaining after payment of the debts. According to the petition in intervention, Whitson had paid $132,250 to 117 stockholders who held stock of the par value of $139,100. If any part, or even the entire amount, of the $132,250 paid the stockholders by Whitson were recovered, the payment of the debts would reduce this fund and the remainder, in view of Whitson's agreement with the accepting stockholders, would have to be repaid to the stockholders, pro rata, up to the par value thereof, before any proceeds would inure to Whitson's benefit. Since the par value of their stock was more than the amount paid out by Whitson to them, this fund would not be sufficient to pay the accepting stockholders the par value and *85 thus nothing would be left for Whitson. Furthermore, we think the prospects of success in such an action were too remote to give it value. Whitson had contracted with the stockholders to buy their stock. It was his personal contract, not the corporation's. His agreement was that he would take over the corporation and liquidate it. His offer to buy the stock was conditioned on his having authority to liquidate without interference. While he made payments to the stockholders with checks on the corporation's account the payment by corporation checks would not appear improper under this arrangement. He paid equal proportions to all accepting stockholders on the first three of the four instalments at a time when the assets appeared to be sufficient to pay all debts and the par value on all the stock, as the balance sheet of March 29, 1933, would indicate. It is to be noted that although the court, in accordance with the intervenors' request, at first directed the receiver to sue the stockholders, this order was vacated a few days later and the court authorized the bringing of such an action by any interested stockholder only if the payment of the expense thereof was first assured. No stockholder *86 undertook to bring such a suit. The cost of such an action was an important element as there were only eight stockholders who had received over $2,000 and fifteen others who had received that amount, and the largest amount paid to any one was $4,000. The difficulties of establishing liability and of collecting judgments for small amounts, if the suit was won, were apparently sufficient to deter any interested stockholders from undertaking such a suit. The debt of Whitson to the corporation, likewise, is not such an asset as would give value to Whitson's stock at the beginning of 1941. The receiver reported in 1935 that he had not proceeded against Whitson as he thought the other assets would produce enough to pay the debts and Whitson was the beneficial owner of most of the stock. He asked for instructions whether to sue. The record does not show that the court gave instruction as to this. The receiver testified that his attorney did not advise him to sue Whitson, that he thought he could not collect from Whitson and that he thought the debt was barred by 1941. It is evident that Whitson did not pay this debt because the payment would benefit the creditors or other stockholders rather *87 than himself. It may be assumed, since he did not pay it, that he would resist efforts to enforce payment. We do not know whether the corporation's claim was valid, nor do we know what defenses Whitson may have had against an action to collect it. Even if the receiver collected the debt, it would not be sufficient to cover the deficit in assets which existed at the end of the receivership, $9,247.50 plus the amount of the court costs, and the amount of $6,850 necessary to pay the stockholders Whitson had agreed to pay in full before withdrawing any part of his investment. Even if interest was collected on Whitson's debt, there was also interest due upon the obligations of Whitson to the accepting stockholders. The respondent's position that the stock became worthless prior to 1941 is borne out by the facts. The causes of action relied upon by the petitioners were too speculative to have value. . We think there are no reasonable grounds for believing that Whitson's stock had value at the beginning of 1941 and have determined that the stock held by Whitson did not become worthless in that year. Decision will be entered for the respondent. Footnotes
*. NOTE - The above reserve has been wiped out on account of Bankruptcy of C. L. Aldredge $330.00 and Foreclosure of J. A. Norris, $94.68.↩